The Chief Justice delivered the opinion of the court.
The state of the case, and. the agreement of the parties,upon which these causes come before us, is neither so full *238] nor so *explicit as to remove all doubt of their true meaning and intention. According, however, to my understanding of them, the object is to ascertain whether the Morris Canal and Banking Company, in the pursuit of the great purpose of their incorporation, the construction of a canal to unite the river Delaware, near Easton, with the tide water of the Passaic, may, without being liable to any action in any form, enter upon, take possession of, and use, the land of the plaintiff below, being on the line of the canal, as designated by the survey filed in the office of the secretary of the state, not having previoulsy made compensation to him, either by voluntary agreement, or in the manner prescribed in the sixth section of the act of incorporation. The object of the parties is to arrive directly at a knowledge and judicial determination of their rights, to reach the substance without impediment or embarrassment from form. On the one hand, if the company, not having made compensation, may, without liability to action, enter upon and use his land, the plaintiff consents the judgments he has obtained shall be reversed. On the other hand, the company, solicitous to exercise their legal rights, - and not disposed to invade the rights of others, consent that if, without liability to action in any form, they may not so *283 enter and use the lands, these judgments shall be sustained, although some other form of action might have been a more appropriate remedy. Under such interpretation of the agreement, and such impression of the views of the parties, drawn as well from the instrument of writing laid before us, as from the observations of the counsel on the argument at the bar, I proceed to the examination of the subject.
In the construction of the 5th and 6th sections of the act of incorporation, a wide difference exists between the views of the company and their counsel, and those entertained by the counsel of the defendant in certiorari; and we have cause to regret that so much plausible support is found for this diversity of interpretation, which might, by a few words, have been readily and entirely obviated. Oil the one part, it is insisted that the company have no right, for the purpose of constructing or making the canal, to enter upon, take possession of, or use the lands on the contemplated route, until, on failure of amicable agreement, the value of the lands and damages have been first ascertained und appraised, and compensation made, or at the least tendered to, *the persons entitled. On the other [*239 hand, on the part of the company, it is insisted they are fully authorized as soon as they have fixed the route, located the works, and filed their survey, to take possession of, and use and occupy all lands, waters and streams, necessary for the use of the canal, and for this end, to assume the property, whether of land or water; of the ancient proprietors. The company contend, that although “ the estate, right, property and interest,” in the land and water thus appropriated, do not become vested in them until compensation has been made to the owners, yet the right of occupation, as well as of assumption, belongs to the company without liability to any action, before and until the value and damages are ascertained ; which can only be done when they cause a survey to be made of the property required by them, exhibit it to one of the justices of this court and make application to him for *284 the appointment- of appraisers; and that in the meantime, and until such exhibition and application, and the ascertainment of the value and damages, no demand can be made or action brought against the company, for the use of the land or water, or for any injury sustained by the proprietors of either.
In the view I take of this case, I deem it unnecessary to examine which of these interpretations is correct, for the plain language of a subsequent, the 20th section, resolves all points requisite, in my opinion, for the decision of the causes before us. The 20th section enacts that nothing in this act shall be taken to impair the right of any person to an action against the said company for damages to his or her water rights, lands, tenements or hereditaments, by the erection of said canal, where such person hath not been agreed with by the said company, or his or her damages, right and estate satisfied and vested in the said company, under the previous provisions of the act. In the first place this section, it is observable, embraces all persons who may sustain injury or suffer damage in lands, tenements, hereditaments and water rights, by the erection of the canal, in whatsoever mode such injury or damage may accrue, whether direct or indirect, immediate or consequential, whether by actual occupation or by remote deterioration. In the second place, it is obervable, that it covers the same extent of damages, right and estate, which are provided. for, and which may be satisfied *240] by or vested in the company, in *virtue of the previous sections; in other words, it extends to all lands, waters and streams necessary for the use of the canal. The design of this section was not to raise or create any new right of action or claim, but to save and preserve existing rights, and to prevent any construction from being given to the powers and privileges granted to the company which would deny, diminish or abridge the right of any person to resort to legal measures in order to obtain recompence for damages to his lands, tenements, hereditaments or water rights by the *285 erection of the canal, if the company did not make an agreement, or cause an appraisement to be made in the manner prescribed. The right of action for such damage is not, by anything in the act impaired ; not weakened ; not lessened; not even postponed to an indefinite period, for so to postpone is manifestly to impair.
The provisions of this section then is that he to whom damage in his lands, tenements, hereditaments or water rights, is done by the erection of the canal, holds, unaffected by any clause or provision, power or authority, in the act, his right to recover compensation, for such injury, unless he has been previously agreed with by the company, or his right and estate been vested in the company in the mode pointed out by the antecedent sections. If it be asked, is not this doctrine inconsistent with the position that the company may enter upon and use the lands without first ascertaining the value and damages, the soundness of which I have said it was unnecessary in the present case to examine ? I think it is not so, in the slightest degree. The legislature may have designedly, and perhaps wisely, authorized the company to enter upon and occupy such lands as they found requisite, saving them from the consequences of the breach of the peace, implied in every entry on lands without leave of the owner, protecting them from liability to respond in damages either vindictive or otherwise for such entry, but leaving to the owner of the property his right to recover remuneration for the actual injury sustained, and his remedy by action to enforce that right in case the company did not in the mode prescribed by the legislature, ascertain the extent of the injury and make satisfaction for it before they proceeded to use or occupy the premises.
Another view of the matter proves that no such inconsistency exists, and evinces the wisdom of the legislature in leaving open *to the owner the way to an action [*241 for the recovery of compensation, after the company had been authorized, if such be the sound construction of the *286 act, to enter upon and possess the lands before making such compensation. The company were empowered to use the land. A summary mode to ascertain itg value or the injury done to the owner was provided. If they thought proper they might first pursue that mode and satisfy the injury. If they preferred, they might first enter upon the land and ■erect their work. Rut in case they did so, the owner was reasonably and properly left free to pursue his legal remedy, not to punish a trespass on his property, but to procure a recompense for the injury he had sustained. Such a provision as' is found in the 20th section,, if the construction given to the 5th and 6th sections by the counsel of the company is correct, seems indispensable to save those sections from just and merited reproach. If their construction be seund, the 6th section affords the only mode whereby the land holder can obtain satisfaction for his property appropriated to their benefit. Yet the fulfilment of this mode wholly depends on the will of the company. Before the land holder can do any act, certain preliminary steps must be taken by the company. He may, indeed, call together the appraisers when they have been appointed ; but their appointment cannot take place until the company have caused a survey to be made; given notice of its intended exhibition to one of the justices of this court; made such exhibition accompanied by a verification of the survey under oath; and in effect, if not in terms, sought the appointment of appraisers. The company, it is said, may at their pleasure, after the line of the route is filed in the secretary’s office, enter upon the lands, divert the mill streams, construct the canal, and occupy and use it. The estate indeed, in the land and water, it is said, does not become vested in them until the compensation is made. But is it not easy then to foresee that without' the 20th section the company may, I do not say will, long enjoy the canal and its benefits before such compensation is made, *287 before they may deem it in any wise material to have the title of the property transferred to them ? It may be convenient for them long to remain the cestui que trusts, and leave the land holders invested indeed with the legal estate, but holding it merely as the trustees of the company.
Inasmuch then, as the legislature authorized the company only, *and not the proprietors, to call into action the [*242 summary mode of ascertaining the compensation due to the latter, the policy of the 20th section is apparent, nay it appears indispensable, to secure the just rights of the proprietors of the soil and waters; and we are therefore warranted in concluding that the legislature intended by the section what its plain terms import.
It was insisted on the argument of these causes, that the right of action mentioned in and saved by the 20th section is against the company, not their agents or workmen, against whom these suits were instituted. There is, in my mind, no soundness in this distinction. Those defendants justify under the supposed legal rights of the company, and rely on them for defence and protection. The suits are defended by the company, and are in fact, whatever they may be in form, suits against them. If maintained, the judgments, as was distinctly avowed, must be paid by the company. To all substantial purposes the company are the real defendants, and whether the action is brought nominally against the agents or against the company, the result, it cannot be denied, is at last the same.
In the consideration of these cases, I have not examined the important point made and much debated at the bar, of the constitutionality of the act in authorizing the assumption of private property for the purpose of the canal. If unconstitutional the judgments in question are right. If constitutional, I have shewn, I trust, that the act contains nothing to preclude the recovery by action, in some form, of recompense for the damages sustained ; and whether that *288 form is in trespass, as these actions are, or in some other style, is rendered unimportant by the agreement of the parties.
. In my opinion, therefore, these judgments should be affirmed.
Eord, J. concurred. Drake, J. gave no opinion, being a stockholder.